THE LONDON ASSURANCE and OVERSEAS INS. AGENCIES, INC., Petitioners, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, LUIS R. POLO, JUDGE, Respondent.

No. C-66-31.    Decided September 5, 1967.

*González & Rodríguez* for petitioners. *Manuel Abreu Castillo* for
   *Asociación de Dueños de Mueblerías de Puerto Rico.*

Second Division composed of Mr. Justice Belaval, as Chief Judge
   of Division, Mr. Justice Hernández Matos, Mr. Justice San-
   tana Becerra, and Mr. Justice Dávila.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

On August 31, 1959, the London Assurance, through
their agents in Puerto Rico, the Overseas Insurance Agen-
cies, Inc., issued a policy on behalf of the *Asociación de
Dueños de Mueblerías de Puerto Rico.* To this printed policy,
following the general model of such insurance instruments,
a typewritten clause of extension of perils was attached.
It specified: "It is mutually understood and agreed that the
policy is extended to cover, subject to all other conditions and
limitations of the contract, against direct loss or damage
caused by cyclone, windstorm or tornado, earthquake and or
volcanic eruption. It is further understood and agreed that
whenever the word 'Assured' or 'Assureds' appears in this
policy, the words 'Associate Members of the Asociación de
Dueños de Mueblerías de Puerto Rico as are named in the
list attached to and forming part of the policy' are substi-
tuted therefor."

On September 6, 1960, the assureds suffered damages in their properties as a result of the floods caused by the windstorm "Donna" during that day, amounting to the sum of $19,127.37. Upon petitioner refusing to pay said losses, all the members of the *Asociación de Dueños de Mueblerías de Puerto Rico*, brought jointly an action against their insurer, petitioner in this proceeding.

In the San Juan Part of the Superior Court of Puerto Rico, petitioners introduced the following defense: The coverage of the policy issued to the *Asociación de Dueños de Mueblerías de Puerto Rico* includes the different named perils, and if the practice accepted by insurers, commissioners, and the courts were not so, it would be necessary to incorporate in the contract the conditions, restrictions, and limitations inherent in each one of those perils, which would degenerate into a contract so long and complicated as to render its interpretation impossible. Therefore, the practice that in a contract of this nature the hazards and/or perils covered be *named* was established and recognized by the courts, it being implied that the coverage as to each one of those specific perils—windstorm is the one involved in this case—is subject to the conditions and exclusions which in relation to each one of the named perils exist in the basic insurance contracts against those same hazards or perils. As to the coverage against windstorm extended to the *Asociación* the basic insurance contract concerning such peril has an exclusion clause which says: "Unless otherwise stipulated in a written endorsement attached to this policy, this company will not be liable for loss caused directly or indirectly by hail, thunderstorm, overflowing of the sea caused by big tidal waves, sea inundations, flood or high tides dragged or not by the wind."

On its part, the *Asociación* cited the following sections of the Insurance Code of Puerto Rico: § 11.118 (1) which provides: "No agreement in conflict with, or modifying or

extending, any contract of insurance shall be valid unless in writing and made a part of the policy"; § 11.250 which provides: "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement, or application attached to and made a part of the policy." After citing said sections, it alleges: The agreement of the parties was performed by both exercising their freedom of contract and although said contract was unilaterally prepared by the Insurance Company, it being a contract of adhesion, expressed the intention of the parties to cover against the perils of windstorm. The insurance company did not add in writing nor make any of the clauses of the typical windstorm contract a part of the policy issued by them. On the contrary it limited itself to adding in typewriting the paragraph previously included. Upon doing so it extended the coverage against the peril of windstorm in a manner limited only by the clauses which appear clearly written and specified in the policy in question. A reading of the agreement known as the "Inland Marine" in the policies denominated "Installment Sales Floater Policy" shows that in its text the clause which the defendant alleges to be implied in this policy is not specified as unnamed peril. The policy contains the unnamed perils and they are clearly included in the installment sales and leased property floater.

It covers the following perils:

(a) Fire and lightning.

(b) Collision (the coming together of cars in coupling shall not be deemed to be collision) derailment, overturning of conveyance only, collapse of bridges, floods (meaning rising waters), earthquake, cyclone, windstorm or tornado, while such property is being transported by land conveyances.

(c) Stranding, sinking, burning or collision, including general average and salvage charges for which the assured

may be legally liable while such property is in or on land conveyances in ferries and/or in cars or transfers. and in addition to these coverages there is also the coverage added in typewriting by the Insurance Company. Therefore, when it is said in the clause subject to interpretation in this case that the clause is extended to cover "subject to all other conditions of the contract, against direct loss or damage caused by windstorm," it is the contract being entered into at that moment by both parties, that is, the installment sales floater.

In view of these arguments, the trial court reached the following conclusions: "If the policy did not have any other provision besides those above-copied, we would necessarily have to conclude that the plaintiff is not entitled to recover for the damages alleged under the terms of the contract, since it arises from the record and from the plaintiff's own memorandum that the properties allegedly damaged by the floods, caused by the windstorm Donna, were located in different premises belonging to the diverse associate members of plaintiff in whose behalf this action has been brought, and *not in transit.* However, on the back of the instrument which we have copied in part, the following was typewritten by defendant through its agent the Overseas Insurance Agencies, Inc.,: 'It is mutually understood and agreed that the policy is extended to cover, subject to all other conditions and limitations of the contract, against direct loss or damage caused by cyclone, windstorm or tornado, earthquake and/or volcanic eruption' . . . . This stipulation added to the contract produces certain doubts. Could it be that the insurer wanted to extend the coverage against the perils of cyclone, tornado, earthquake, etc., irrespective of whether the damages would occur while the property was being transported by land? Inasmuch as it is a rule of law established in this jurisdiction that contracts (and insurance policies are a contract between the insurance company and the assured)

should be restrictively construed against the one who drafted them and liberally in favor of the other party, and having general knowledge that insurance contracts are drafted by the insurer, we give the benefit of the doubt we have to plaintiff and construe the policy in the sense that the last agreement copied has the effect of extending coverage to the insured's property, irrespective of whether the latter was not in transit."

■ We agree with appellees, in the sense that when it is said in the typewritten clause, added to the printed text, that the policy is extended to cover direct loss or damages caused by windstorm subject to other conditions and limitations of the contract, the reference to the contract is to the one being perfected at this moment by the parties, that is the installment sales floater. In the mind of the contracting parties there could be no typical contract of cyclone or windstorm and much less the exclusion clause concerning any loss caused directly or indirectly by hail, thunderstorm, overflowing of the sea caused by tidal waves, sea inundations, or high tides dragged or not by the wind.

■ Section 11.180 of the Insurance Code of Puerto Rico, deals with an entire insurance contract, which contains everything agreed to by the parties and is in writing. Not only the simpleness of its wording is sought but also the simplicity of its form, standard clauses according to the different kinds of insurance, approved by the Commissioner of Insurance, proverbial meanings gathered from an obscure loan with the common use, without contradictory riders which might promote a vicious litigation. On our part, in the case of *Barreras* v. *Santana*, 87 P.R.R. 215, 221–223 (Rigau) (1963), we decided on a simplification of the niceties of construction and of the pettifogging refinements to which the traditional terms of the sciences of sea-land trade could have been subjected.

■ The so-called exclusion clauses had succeeded, until recently, in diminishing the liabilities of an insurer up to a minimum incompatible with the health of the credit. Above all, in this curious amalgamation of the marine-land insurance, a kind of inland marine insurance wherein old dialectic forms of sea dogs are coupled with the linguistic turns which are better adjusted to the official metaphor of a language of land tigers. An example of this is found in the words "windstorm", "cyclone", so full of meaning in our particular art of understanding the phenomena of nature. The ancients said that Puerto Rico had cyclones which terminated with an earthquake or with a hailstorm in the vortex. Still our *pleneros* talk about a soft wind tied to the waistline which carries away half of the island.

The writ issued will be quashed.